**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

CRISSY RUSSELL                                                                                              PLAINTIFF

v.                                              No. 3:09CV00147 JLH

ST. BERNARD'S HOSPITAL INC.
d/b/a ST. BERNARD'S MEDICAL CENTER                                            DEFENDANT

**OPINION AND ORDER**

Crissy Russell commenced this action against St. Bernard's Hospital Inc., alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, in the form of pregnancy and sex discrimination. St. Bernard's Hospital has moved for summary judgment, and Russell has responded. For the following reasons, the hospital's motion for summary judgment is denied.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Of course, "[b]ecause [employment] discrimination cases often turn on inferences rather than on direct evidence, [courts] are particularly deferential to the non-moving party alleging discrimination." *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir. 1996). The Eighth Circuit has cautioned that "[s]ummary judgment should seldom be granted in employment discrimination cases." *Peterson v. Scott Cnty*, 406 F.3d 515, 520 (8th Cir. 2005).

## II.

In January 2008, Russell was hired as a part-time Computer Tomography ("CT") technician by Chris Copeland, Director of Radiology at St. Bernard's Hospital. Copeland was Russell's supervisor while she was employed at the hospital. Around May 2008, Russell learned that she was pregnant and so informed Copeland. Some time later, in October 2008, a full-time Computer Tomography/Magnetic Resonance Imaging ("CT/MRI") technician position became available. Russell was promoted to this position by Copeland.

In May 2008 Russell informed Copeland that she was scheduled to give birth by caesarean section and that her physician recommended a six week recovery period. By electronic mail, the human resources department informed Copeland that Russell was not eligible for leave under the Family and Medical Leave Act ("FMLA") and that her only options were to switch to a Per Requested as Needed ("PRN") status, take up to thirty days of leave, resign, or be terminated. On December 9, 2008, Copeland informed Russell of all options except for the thirty-day leave option and offered to switch her to PRN status. Later, Russell learned about and requested the thirty-day leave option, but her request was refused. Russell contacted an independent attorney and the EEOC.

Acting on the advice of counsel, she turned down the offer to switch to PRN status. Russell gave birth by caesarean section on December 18, 2008. She was absent from work on December 20, 21, and 27 of that year, and her employment was terminated following the third unexcused absence. Russell's position was filled by a male employee who was only able to perform MRI duties and could not perform CT duties.

During discovery, St. Bernard's Hospital acquired evidence indicating that Russell was employed by a clinic, the Clopton Clinic, for about two weeks in 2007. Russell did not include this past work experience on her employment application. The hospital also learned that Russell secretly recorded conversations with Copeland—a violation of employee policy.

### III.

St. Bernard's Hospital seeks summary judgment on both Russell's pregnancy discrimination claim and sex discrimination claim. St. Bernard's Hospital also argues that after-acquired evidence of Russell's violations of St. Bernard's Hospital's employee policy limit Russell's possible remedies. Finally, St. Bernard's Hospital contends that Russell's refusal to accept the PRN technician position constitutes a failure to mitigate her damages limiting her right to relief.

**A.    PREGNANCY DISCRIMINATION**

Under Title VII, a plaintiff may prove a discriminatory discharge through either "direct evidence" or "indirect evidence." *Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 809-10 (8th Cir. 2007). Where a plaintiff chooses the latter method, that is, proof by circumstantial evidence, the Eight Circuit follows the *McDonnell Douglas*[1] burden-shifting approach. *Fjelsta*, 488 F.3d at 810.

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

In the instant case, the parties agree that the *McDonnell Douglas* framework controls. Under this approach, Russell must first establish a *prima facie* case by proffering evidence "(1) that she belonged to a protected class, (2) that she was qualified to receive the benefit. . . (3) that she was denied the benefit, (4) and that the same benefit was available to others with similar qualifications." *Lang v. Star Herald*, 107 F.3d 1308, 1311 (8th Cir. 1997). "[I]t is well-established that the threshold of proof necessary to establish a prima facie case is minimal." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998).

If Russell establishes a *prima facie* case, then a presumption of discrimination arises which St. Bernard's Hospital must rebut by providing a "non-discriminatory, legitimate justification for its conduct." *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 879 (8th Cir. 2010). Like the *prima facie* case, "[t]he burden to articulate a nondiscriminatory justification is not onerous[.]" *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005) (quoting *Floyd v. Mo. Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)). Should St. Bernard's Hospital meet this burden, Russell must "produce evidence sufficient to create a genuine issue of material fact regarding whether [defendant's] proffered nondiscriminatory reason is a pretext for discrimination." *Elam*, 601 F.3d at 879.

Russell was pregnant when the adverse employment action was taken and, therefore, was a member of a protected class. *See Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir. 1998) ("As amended by the Pregnancy Discrimination Act, the sex discrimination proscribed by Title VII includes discrimination on the basis of 'pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes. . .' ") (quoting 42 U.S.C. § 2000e(k)). Further, St. Bernard's

Hospital does not dispute that Russell was qualified for her position and that she was denied the benefit of the thirty-day leave option even though she requested it. The hospital often has provided the thirty-day leave option to other non-pregnant employees or pregnant employees who were not eligible for FLMA. Russell was replaced by a non-pregnant employee. *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994) (One way for a plaintiff to establish prong four is to provide "proof of replacement by a person outside the protected class."). Russell has presented evidence sufficient to create a fact question regarding whether her replacement was less qualified than she for the CT/MRI technician position. Finally, a reasonable jury could find that the hospital provided inconsistent explanations for its refusal to provide Russell with thirty days of leave. Russell has presented evidence that St. Bernard's Hospital, in its position statement to the EEOC, stated that Russell declined to accept the option to return to her full-time status position provided she was "off work for one month or less." However, in its brief to the Court, the hospital asserts that it, through Copeland, determined "that Russell was not eligible for the thirty-day leave option" because she had communicated that "she needed a six week leave based upon the recommendation of her physician." A company's "inconsistent explanations" for its decision to terminate an employee "are enough to support an inference of discriminatory treatment." *Young*, 152 F.3d at 1022.

However, a jury could also find that St. Bernard's Hospital provides a legitimate, non-discriminatory justification for its conduct—it refused to offer Russell or permit her to take the thirty-day leave option because she said that she needed six weeks of leave. The thirty-day leave period was not sufficient to cover a six-week absence. Moreover, once Russell sought the thirty-day

leave option, Copeland explains that he refused her request because had already begun the process of moving Russell to a PRN position and another employee into Russell's position.

The evidence, when viewed in the light most favorable to Russell, creates an issue of fact as to whether the hospital's reason for refusing to grant Russell the thirty-day leave option is a pretext for discrimination. Russell contends that hospital policy required a supervisor to refer an employee who requires leave to the hospital's human resources department and that Copeland did not do so in her case. Instead, upon learning that Russell did not qualify for FMLA leave, Copeland asked human resources about possible options and, based on a brief response email, attempted himself to explain the leave options to Russell. There is a fact question regarding when Russell learned of the thirty-day leave option and requested the benefit of this option. Copeland asserts that he refused Russell the thirty-day leave option, in part, because he had already started the process for shifting her to a PRN position. However, Russell claims that through her own initiative she learned of and requested the thirty-day leave option the day after Copeland informed her of her options.

Copeland explains that he did not offer Russell the thirty-day leave option because he believed it would be insufficient to cover her absence and that, although Russell stated that she wanted to try for the thirty-day leave option, she never presented evidence that her doctor believed she could return to work within thirty days. However, there is an issue of fact as to whether Copeland even had the discretion to refuse to tell Russell of the thirty-day leave option or to decide whether or not she qualified for it. The email sent to Copeland states that the discretion to grant this option rested in Copeland, but Jacque Ballard, who made final termination decisions, testified in her deposition that any employee not eligible for FMLA but who is seeking leave must be informed of the thirty-day leave option. Further, Ballard testified that a supervisor such as Copeland has virtually

no discretion to refuse an employee this option—that decision rested with the human resources department. If a jury concludes that hospital policy required Copeland to inform Russell of the thirty-day option and to send her request for it to human resources, his failure to comply with hospital policy could permit a jury to conclude that he was motivated by discriminatory intent.

Finally, even if the discretion to grant or refuse the thirty-day option rested with Copeland, there is a question of fact as to whether his refusal to grant Russell the option and then see if she was able to return within thirty days constituted disparate treatment. Although Kristie Lands from the hospital's human resources department said that employees must express verbally or in writing that they would be off for less than thirty days to qualify for the thirty-day leave option, Russell presents evidence indicating that this requirement was rarely enforced. Russell provides evidence that other employees were permitted to take the thirty-day leave option even though they did not initially know how long they would need.[2] Russell asserts that in these cases, where it later became necessary to take more than thirty days, the employees' positions would, at that time, be changed to part time or PRN status. In the instant case, Russell contends that she would have been able to return within thirty days. A jury could find that other employees who were given the thirty-day leave option on a wait-and-see basis, but that this was not granted to Russell even after she requested it. This evidence creates a genuine issue of material fact regarding whether St. Bernard's Hospital's proffered reason for terminating Russell was a pretext for discrimination.

---

[2] As noted, there is a fact question regarding who had the authority and discretion to grant Russell thirty days of leave, Copeland or the hospital's human resources department. Therefore, defendant's argument that Russell's examples involved employees who were not similarly situated, because Copeland was not their supervisor, must fail.

St. Bernard's Hospital attempts to rebut Russell's evidence of pretext by pointing out that Copeland was the supervisor who recently promoted her to CT/MRI technician position—a decision he made even after he had learned that Russell was pregnant. *See Arrelah v. Cnty. of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) ("[T]here is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time.") (quoting *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362 (8th Cir. 1997)); *Colenburg v. STARCON Int'l Inc.*, 656 F. Supp. 2d 947, 961 (D. Minn. 2009) (applying the same decision-maker inference where the supervisor who terminated the employee was also responsible for promoting him.). Russell contends that the inference should not apply because her promotion was probably automatic since she was the most senior, internal candidate—and possibly the only qualified one—for the CT/MRI technician position. St. Bernard's Hospital has a policy of preferring internal candidates for promotion. Further, Russell states that she was given the position even though she was never interviewed for it. The Seventh Circuit has commented that

> [T]he same-actor inference is unlikely to be dispositive in very many cases. In fact, we have found no case in this or any other Circuit in which a plaintiff relying on circumstantial evidence to prove an improper motive was able to produce sufficient evidence to otherwise sustain his burden on summary judgment and yet was foreclosed from the possibility of relief by the same-actor inference. This is unsurprising given that the same-actor inference is not itself evidence of nondiscrimination. It simply provides a convenient shorthand for cases in which a plaintiff is unable to present sufficient evidence of discrimination. . . Whether a plaintiff can survive summary judgment on a discrimination claim depends on the evidence a plaintiff is able to present. We therefore doubt the utility of broad generalizations about who is and is not likely to discriminate in deciding whether a plaintiff has produced sufficient evidence of discrimination to sustain his burden on summary judgment.

*Johnson v. Zema Systems Corp.*, 170 F.3d 734, 745 (7th Cir. 1999). A reasonable jury could conclude that Russell's promotion was automatic. Thus, the evidence presented is insufficient to entirely foreclose Russell from the possibility of relief on her pregnancy discrimination claim.

**B.    SEX DISCRIMINATION**

As a woman, Russell is a member of a protected class. As noted above, St. Bernard's Hospital does not dispute that Russell was qualified for her position and that she was denied the benefit of the thirty-day leave option even though she requested it. Further, Russell was replaced by a male. There is a material question of fact as to whether Russell's replacement was qualified to perform her job. The hospital asserts that Russell's primary duty was her MRI work. However, Russell contends that her CT work was also a material aspect of her position. The burden on the plaintiff is not onerous. Russell has offered sufficient evidence to establish her *prima facie* case.

Russell does not contest St. Bernard's Hospital's explanation that it terminated her for failing to show up for work on three assigned days. Rather, Russell contends that she would have been able to attend all work assignments had she been given thirty days of leave. Russell would not have missed work on those assigned days if she had been given the option of taking thirty days of leave.

As explained above, Russell has presented evidence sufficient to create an issue of fact regarding whether St Bernard's Hospital's reasons for refusing to grant her thirty days of leave and, as a result, ultimately terminating her employment and replacing her with a possibly less qualified male were pretextual. The hospital has stated that it replaced Russell with a male because the male was the next internal candidate in the line for promotion. Further, although the male employee was not qualified to perform CT work, he was required "to either go home without pay or utilize his paid time off" if the hospital ran out of MRI work for him and, therefore, did not receive better treatment

than Russell. Nonetheless, several circuits have held that a *prima facie* case, combined with evidence that the employer's explanation for its conduct is false, "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Hinson v. Clinch Cnty., Georgia Bd. of Educ.*, 231 F.3d 821, 831-32 (11th Cir. 2000) (finding that a female employee who was demoted and replaced by a less qualified male survived summary judgment because she presented evidence that the proffered reason for her demotion was false); *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 857-57 (4th Cir. 2001) (summary judgment inappropriate where plaintiff proved *prima facie* case and presented evidence creating a material issue of disputed fact as to whether the employer's explanation was false); *Blow v. City of San Antonio*, 236 F.3d 293, 298 (5th Cir. 2001) (same). The Court has already concluded that there is a fact question as to whether Russell can show that St. Bernard's Hospital's explanation for its decision to refuse her the benefit of the thirty-day leave option was false. For all the reasons discussed in the above pretext analysis, a jury should decide whether the hospital's refusal to grant Russell thirty days of leave was made in order to force her out and replace her with a male employee.

### C.     AFTER-ACQUIRED EVIDENCE

St. Bernard's Hospital also seeks summary judgment on the scope of potential remedies available to Russell should she prevail on the merits. Specifically, the hospital argues that there is no genuine material issue of fact as to whether Russell can seek reinstatement or front pay because evidence acquired during discovery indicates that Russell violated its employment policy. Further, St. Bernard's Hospital hopes to limit any possible back pay from the date of the discharge to the date that these violations were discovered.

In *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995), the Supreme Court settled a split among the circuits regarding the effect of evidence of wrongdoing by an employee acquired during discovery in a suit against the employer for discrimination. The Court held that, while such "after-acquired" evidence does not cut off an employer's liability under anti-discrimination statutes, it may be relevant to damages calculations. *Id.* at 357-58, 360, 115 S. Ct. at 884-85. The employer carries the substantial burden of establishing that "the wrongdoing 'was of such severity' that the employee *would have* been terminated on those grounds *alone*." *Harris v. Chand*, 506 F.3d 1135, 1139 (8th Cir. 2007) (citing *McKennon*, 513 U.S. at 362-623, 115 S. Ct. at 886-87) (emphases added); *see also Welch v. Liberty Mach. Works, Inc.*, 23 F.3d 1403, 1406 (8th Cir. 1994) (employer had burden of showing that it would not have hired defendant had it been aware of the after-acquired evidence).[3] Courts "must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals, for things are often observed in the breach but not in the keeping." *Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004).

St. Bernard's Hospital contends that Russell falsified her employment application by failing to mention her work at the Clopton Clinic and that the hospital would have terminated her had it known about this omission. To support this contention, the hospital alleges that it has fired eight other employees in the past decade for falsifying employment applications. Russell denies that the employment application, by its terms, is written so as to require applicants to list all prior

---

[3] Although *Welch* was overruled by *McKennon* regarding whether after-acquired evidence bars any recovery, *Welch* is still good law as to the employer's burden regarding the after-acquired evidence doctrine. *Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F. Supp. 393, 409 n.17 (D. Minn. 1996).

employment. The employment application states that an employee shall be subject to dismissal for failing "to give any material information herein requested." Russell says that the two-week employment at the Clopton Clinic was not material. There is an issue of fact as to whether Russell's omission was a material falsification of her employment application. Furthermore, Russell states in an affidavit that she informed St. Bernard's Hospital, by means of its hiring manager, of her employment at the Clopton Clinic, which means that an issue of fact exists as to whether St. Bernard's Hospital actually knew of Russell's employment at the Clopton Clinic even before hiring her.

St. Bernard's Hospital also claims that it would have terminated Russell, pursuant to policy, for secretly recording conversations with Copeland. However, the employee policy only states that the hospital *could* terminate Russell for recording the conversations, it does not state that the hospital *must* terminate Russell for such conduct. Further, the hospital offers no instances where it has terminated employees for recording conversations with hospital personnel. A jury could conclude that St Bernard's Hospital has not met its "substantial" burden of showing that terminating an employee for this conduct would have taken place as a matter of "settled" policy. *Waag*, 930 F. Supp. at 408. Summary judgment is inappropriate.

**D.    MITIGATION**

Finally, St. Bernard's Hospital argues that Russell's refusal to accept the PRN position offered to her constitutes a failure to reasonably mitigate her damages and therefore bars any claim for damages under the circumstances presented in this case. Since this claim is an affirmative defense, the burden of proof falls on St Bernard's Hospital. *See Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 905 (8th Cir. 2006). Moreover, the duty to seek comparable or

substantially equivalent employment does not require a party to "go into another line of work, accept a demotion, or take a demeaning position[.]" *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S. Ct. 3057, 3065, 73 L. Ed. 2d 721 (1982); *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 992 (8th Cir. 2007), *cert. denied*, 552 U.S. 817, 128 S. Ct. 98, 169 L. Ed. 2d 22 (2007). The hospital concedes that the PRN position only provides the employee with work on an "as needed" basis. In contrast, Russell's CT/MRI position was full time and, she alleges, included benefits. A reasonable jury could conclude that the PRN position was a demotion or is not "substantially equivalent" to the CT/MRI position. Therefore, there is a genuine issue of material fact as to whether Russell violated her duty to mitigate lost wages by refusing to accept the PRN position.

## CONCLUSION

For the foregoing reasons, St. Bernard's Hospital's motion for summary judgment is DENIED. Document #15.

IT IS SO ORDERED this 27th day of October, 2010.

J. LEON HOLMES
UNITED STATES DISTRICT COURT