**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

CRISSY RUSSELL                                                                                                        PLAINTIFF

v.                                           No. 4:11CV00177 JLH

ST. BERNARD'S HOSPITAL INC.,
d/b/a ST. BERNARD'S MEDICAL CENTER                                                         DEFENDANT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Crissy Russell brings this action against her former employer, St. Bernard's Hospital Inc., alleging that St. Bernard's discriminated against her because she was pregnant and because of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act. Following a one-day bench trial, the Court granted the parties' request for permission to file post-trial briefs. The parties have filed their briefs. This case is now ripe for a decision.

**I.**

St. Bernard's employs nearly two thousand persons, more than three-fourths of whom are female. Chris Copeland is the Director of Radiology for St. Bernard's, a position he has held for five years. He supervises a staff of approximately 100 persons, some three-fourths of whom are female.

In January of 2008, Copeland hired Russell to be a part-time Computed Tomography ("CT") technician. In May of 2008, Russell learned that she was pregnant and promptly informed Copeland. In October of 2008, Copeland promoted Russell to a full-time Computed Tomography/Magnetic Resonance Imaging ("CT/MRI") technician position. Russell was the most senior, qualified candidate who was already employed by St. Bernard's. She informed Copeland of her interest in the position, and he promoted her.

On October 25, 2008, Russell informed Copeland in writing that she was scheduled for a cesarean section on December 18, 2008, and that she anticipated taking six weeks of leave, returning to work on January 31, 2009. Russell testified that Copeland told her that he would have a co-worker, Jim Robbins, who was an MRI technician on PRN[1] status, cover her Christmas shifts. On December 7, 2008, Russell left Copeland a note thanking him for arranging coverage for her shifts, asking if there was any paperwork she needed from her physician, and stating that her physician normally recommends a six week recovery period following a cesarean section.

On December 8, 2008, Copeland telephoned Russell and asked her if she had filled out her Family and Medical Leave Act paperwork. Russell told Copeland that she did not think she was covered by the FMLA. Copeland said that he would contact St. Bernard's human resources department but assured her that he did not believe there would be any problems. Copeland then contacted St. Bernard's human resources department and received an email from Kristie Lands, a human resources representative, stating:

> I've researched her records and found that she is not eligible for FMLA. Since she is not protected by any leave policy her employment is not protected. She cannot be off work more than 4 weeks without changing her status in some way whether it be a request to transfer to Staff Support or resignation due to health. Policy does not allow employees to maintain full time status if not working full time if they are not protected by a leave policy. Of course allowing the 4 weeks off is your discretion. If you choose not to allow, her employment will be ended, if you choose to allow we will wait the 4 weeks. If she is released she will return within the same status. If she's not released after 4 she will have to transfer or terminate.

St. Bernard's refers to the option of granting four weeks of leave as Policy 46. Policy 46 states:

> Employees who do not meet the qualifications to be eligible for a leave of absence may be extended the opportunity to be off from work 30 calendar days. In these

---

[1] *See* Dorland's Illustrated Medical Dictionary 1520 (30th ed. 2003) ("p.r.n" stands for "pro re nata" which means "according to circumstances").

>   instances, when the employee can return to work without restrictions, benefits and status will remain the same upon return.
>
>   When employees are off duty due to a medical or mental necessity, a Fitness for Duty, will be required to be completed by a physician denoting that the employee can return to work, without restrictions. If this cannot be accomplished the employee will be required to terminate employment or transfer to a posted position that meets their physical limitations.

Copeland had been unaware of Policy 46 until he received Lands' email.

Russell testified that on December 9, 2008, Copeland informed her of all of these options except Policy 46. According to Russell, Copeland offered to inquire if Robbins would be willing to swap positions with her. Upon learning she could not keep her full-time position, Russell contacted an attorney and the Equal Employment Opportunity Commission for advice. She was told not to sign any documents indicating that she wanted to move to PRN status. According to her testimony, Russell went to St. Bernard's human resources department and talked with Jacque Ballard on the following day. Ballard confirmed that Copeland had correctly explained her options. Russell testified that Ballard also mentioned Policy 46 but stated that employees had no right to the policy and that it required the supervisor's consent. Russell testified that Ballard telephoned her later that day after conferring with Copeland. According to Russell, Copeland had told Ballard that Russell wanted to move to PRN status and that he had already implemented the process to change her status. Russell testified that when she called Copeland to request leave pursuant to Policy 46, he stated that Robbins had already signed the transfer papers and that he did not think Russell's physician would be willing to authorize a thirty-day recovery period.

On December 14, Russell had a conversation with Copeland in which she reiterated her request for thirty days of leave and he again refused it. Russell explained to Copeland that the six-week estimate was merely her physician's normal recommendation, and that she would prefer to ask

her physician whether it might be possible for her to return to work within thirty days. Nevertheless, Copeland stated that he would not consider Policy 46 because Russell had already indicated that she needed six weeks of leave. On the following day, Copeland telephoned Russell who confirmed that she would not accept the PRN position.

Although, at trial, Copeland could not recall a specific conversation with Russell between December 8 and December 14, he testified that he probably conferred with her about her maternity leave around that time. Copeland testified that he did not tell Russell about Policy 46 because he considered it irrelevant since she had told him that she would need six weeks of leave. Copeland explained that he refused Russell's request to take thirty days of leave on a "wait-and-see" basis because Russell had already indicated that her doctor recommended six weeks for recovery,[2] and Copeland did not think she would be able to return within thirty days based on his past experience with the leave needs of pregnant employees.[3] Furthermore, Copeland testified that his department provides emergent services, which require seamless, twenty-four hours per day coverage. The department's operations could be compromised if he scheduled an employee for thirty days of leave, hoping that the employee would be sufficiently recovered to return to work, when the indications were that the employee would not be able to return on schedule.

---

[2] Ballard testified that an employee who specifically states a need for more than thirty days of leave is not eligible for leave pursuant to Policy 46.

[3] In addition to Copeland's belief that Russell would not be able to return to work within thirty days, Ballard testified that, in her eleven years at St. Bernard's, she had amassed "a considerable amount of experience" with employees who take leave for cesarean sections. She testified that she had never had an employee return to work from a cesarean section in less than six weeks. Similarly, Lands testified that, in her eight years at St. Bernard's, she had never had an employee return to work within thirty days after undergoing a cesarean section.

Because Russell refused to transfer to PRN status, she remained scheduled to work on weekends. She gave birth via cesarean section on December 18, 2008. She was scheduled to work on December 20, 21, and 27, but obviously she did not do so. She was then terminated on December 29, pursuant to St. Bernard's policy, because she had three unexcused absences. On January 14, 2009, Russell's physician provided her with a written note stating that she had recovered sufficiently to return to work.

## II.

Russell alleges that St. Bernard's discriminated against her because of her pregnancy and sex. Although the familiar *McDonnell Douglas* burden-shifting framework is helpful in analyzing an employment discrimination claim, when the record is fully developed, as it is here, the finder of fact should proceed directly to the ultimate question of whether the adverse employment action was motivated by discriminatory animus. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.' ") (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981)); *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 731 (8th Cir. 1992) ("Once a full record has been developed, as it was in this case, the factfinder should proceed to the specific question of whether the action of the employer was discriminatory."). Thus, the issue is whether Russell has proven by the greater weight of the evidence that St. Bernard's intentionally discriminated against

her because she was pregnant or because she is female. *Aikens*, 460 U.S. at 715, 103 S. Ct. at 1482; 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1).

Copeland is the one who made the decision not to permit Russell to take thirty days of leave pursuant to Policy 46 while waiting to see whether she actually could return to work in thirty days. Russell notes that Copeland told her on December 14, 2008, that he had pulled in the entire management team, had talked with human resources, and had included a vice president in the discussion, and "[w]e have tried every way we can to make this work. This is the only option we have." In that same conversation, Copeland said that he had spoken to other managers in an effort to find some other job in which Russell could be placed, mentioning diagnostic radiology as an example, but he never said that the decision not to allow Russell to take thirty days of leave on a "wait-and-see" basis was made by anyone but himself. During that same conversation, Copeland asked Russell what she wanted him to do, and she replied that she wanted him to hold her job for four weeks, to which he responded, "I am not going to do it." When she mentioned the situation of another employee who was allowed to take thirty days of leave on a "wait-and-see" basis, Copeland replied that at that time someone else held his position. The evidence includes emails from the human resources department to Copeland in which it is made clear that the decision of whether to allow thirty days of leave on a "wait-and-see" basis was Copeland's to make. Testimony at trial, which the Court credits, established that so long as the department manager is within the bounds of St. Bernard's policy, the decision of whether to allow Policy 46 leave is within the manager's discretion. The greater weight of the evidence shows that the decision at issue was Copeland's to make and that he made it.

Copeland testified that he did not originally consider offering Russell leave pursuant to Policy 46, once he learned of it, because he did not believe Russell would return to work within thirty days and because he needed to provide seamless, around-the-clock coverage. Copeland testified that he did not think that Russell would be able to return to work within thirty days because Russell had told him that her physician normally recommended six weeks of leave following a cesarean section and because, in his experience, most pregnant employees need six weeks of leave. As noted, Copeland testified that his department provides emergent as well as non-emergent services and, therefore, requires seamless coverage twenty-four hours per day, 365 days per year. Thus, scheduling Russell to begin working thirty days after her cesarean section—when she likely would not be able to return to work within that timeframe—created a risk that the department's operations could be compromised if she proved unable to return.

The Court believes Copeland. Copeland's manner while testifying was forthright—he appeared to be sincere. In addition, Copeland supervises a largely female staff, and there was no evidence that he has engaged in any pattern or practice of discrimination based on sex or pregnancy.

Moreover, the history of Copeland's professional relationship with Russell is inconsistent with the claim that he acted with a discriminatory animus on account of her pregnancy or her sex. Copeland hired Russell in January of 2008. After he learned that she was pregnant in May, he gave her favorable evaluations in June and promoted her to a full-time position in October. Even though St. Bernard's prefers to hire from within, Copeland was not required to give Russell the full-time position—he could have hired an external candidate. Further, according to Russell's testimony, Copeland took the initiative to organize a schedule around Russell's anticipated absence. He never complained about her request for six weeks of leave. Once Copeland was told that Russell did not

qualify for FMLA leave and therefore could not be absent for six weeks, he offered to place her in a PRN position so that she could retain her employment. When he made that offer, he knew that another employee was scheduled for maternity leave after Russell and that Russell could, if she chose, take that employee's hours. He told Russell that he planned to move her back into a full-time position as soon as one became available. In short, Copeland's actions do not indicate that he wanted to get rid of Russell because she was pregnant or because she was a female; to the contrary, his actions indicate that he wanted to keep Russell employed in his department. *Cf. Arrelah v. Cnty. of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) ("[T]here is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time.") (quoting *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362 (8th Cir. 1997)); *Colenburg v. STARCON Int'l, Inc.*, 656 F. Supp. 2d 947, 961 (D. Minn. 2009) (applying the same decisionmaker inference where the supervisor who terminated the employee was also responsible for promoting him.).

Perhaps Copeland should have exercised his discretion to permit Russell to take thirty days of leave while waiting to see whether she could return within thirty days, but "federal courts do not serve as 'super-personnel departments,' sitting in judgment of an employer's business decisions absent evidence of discrimination." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 522 (8th Cir. 2010) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)). It may be that Copeland was more rigid than he should have been, but that does not suffice to prove that he discriminated against Russell because of her sex or her pregnancy. *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005) (the role of the federal courts is not to offer a remedy for the unduly harsh treatment of an employee by an employer).

Russell introduced into evidence thirty-six examples of employees who were permitted to take leave pursuant to Policy 46, some on a "wait-and-see" basis. Those who were unable to return to work within thirty days were permitted to switch to PRN status. None of these employees was supervised by Copeland. The parties stipulated that Copeland had never supervised an employee at St. Bernard's who needed a leave of absence for a medical reason but who did not have FMLA leave. Consequently, the employees in Russell's examples were not situated similarly to Russell and do not prove that St. Bernard's discriminated against Russell because of her sex or pregnancy. *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 720 (8th Cir. 2008) (to prove discrimination based on similarly-situated persons outside the protected class, "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.") (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)). Even if those examples were relevant evidence in this case, they do not show that St. Bernard's permits males but not females to use Policy 46, nor do they show that St. Bernard's permits non-pregnant employees to use Policy 46 rather than pregnant employees. Almost all of these thirty-six employees were female; nine of them were pregnant.

Russell also contends that St. Bernard's has offered shifting and conflicting reasons for its decisions, which shows intentional discrimination. Although St. Bernard's explanation to the EEOC concerning why Russell was refused the benefit of Policy 46 was partially inaccurate, Russell has not proven by the greater weight of the evidence that St. Bernard's engaged in a deliberate falsehood in order to mask intentional discrimination. There was no testimony at trial as to who prepared the EEOC response or how the inaccurate information came to be included in it.

In summary, Copeland was the decisionmaker. He offered cogent, nondiscriminatory reasons for his decision. The Court accepts his explanations as truthful based on his manner while testifying and the other evidence in the case. Although Copeland could have been more flexible in his approach to Policy 46, the fact that he has managed a large female staff for five years without indication of bias based on sex or pregnancy, as well as the history of his professional relationship with Russell, support his testimony that his decisions regarding Russell were not motivated by discriminatory animus. Russell did not show that she was treated differently from any similarly situated employee. Considering all of the evidence, the Court concludes that Russell has failed to prove by the greater weight of the evidence that St. Bernard's took an adverse employment action against her because she was pregnant or because she is a female.

## CONCLUSION

As stated above, Russell failed to prove that St. Bernard's discriminated against her based on pregnancy or sex. Judgment in favor of St. Bernard's will be entered separately.

IT IS SO ORDERED this 4th day of August, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE